United States District Court
Southern District of Texas
**ENTERED**
February 08, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| HERITAGEMARK, LLC, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:22-cv-04513 |
| | § | |
| UNUM LIFE INSURANCE | § | |
| COMPANY OF AMERICA, | § | |
| *Defendant*. | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

This is a dispute over a universal life insurance policy.[1] Pending before the Court is Defendant Unum Life Insurance Company of America's motion to dismiss for failure to state a claim. Def.'s Mot. Dismiss, ECF No. 15. In its complaint, Plaintiff Heritagemark, LLC asserts claims for breach of contract, breach of implied covenant of good faith and fair dealing, conversion, and declaratory judgment. Pl.'s Compl., ECF No. 1. Plaintiff's theory is that a provision in the life insurance contract creates an ongoing obligation to reduce cost of insurance ("COI") payments based on declining national mortality rates. Defendant allegedly breached this duty by failing to adjust its COI rates since at least 2010. Plaintiff also raises evidentiary objections to several exhibits attached to the motion. Pl.'s Objections, ECF No. 25.

---

[1] This case was referred for all pretrial matters pursuant to 28 U.S.C. § 636(b)(1). Order, ECF No. 29. A motion to dismiss is a dispositive motion appropriate for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016).

The parties requested oral argument on the motion, and the Court held a Zoom hearing on January 25, 2024. Both parties attended. Having heard oral argument and after thoroughly reviewing the pleadings, the briefing,[2] and the applicable law, the Court recommends that Defendant's motion to dismiss be denied, as stated on the record at the hearing, insofar as Plaintiff's contract claims are concerned. However, the Court recommends that Defendant's motion be granted in part, to the extent that Defendant seeks dismissal of Plaintiff's extracontractual claims.

## I.   BACKGROUND

### A.   Factual and Procedural Background

Attached to the complaint is an exemplar life insurance certificate, which was issued on December 1, 1992, pursuant to a group policy for Toshiba International that Defendant administered. ECF No. 1 at 3 n.1. The certificate was initially issued to nonparty Charles de Ainza, a resident of Houston, who was at some point a Toshiba employee. *Id.* at 48. Plaintiff alleges that Toshiba never substantively negotiated the terms of the group policy under which the certificate was issued. *Id.* ¶¶ 44-46. Plaintiff later purchased the certificate in April of 2014 through a viatical

---

[2] Plaintiff filed a response to the motion to dismiss, ECF No. 24, and Defendant filed a reply, ECF No. 27. Defendant also responded separately to Plaintiff's evidentiary objections. ECF No. 28. Plaintiff subsequently filed a notice of supplemental authority, ECF No. 41, without seeking leave. Defendant responded substantively, ECF No. 43, but did not ask the Court to strike the notice. Any argument regarding the propriety of filing a supplemental notice without leave is therefore waived.

settlement.[3] *Id.* ¶¶ 3-4.

Plaintiff alleges that declining mortality rates and longer life expectancy in recent years are "a well-publicized fact." *Id.* ¶ 60. Publicly available data on age-adjusted mortality rates in the United States from 1980 to 2017 shows a steady decrease in deaths over time. *Id.* ¶¶ 63-70. Defendant was aware of these trends, as expressed in corporate filings from 2006 through 2015. *Id.* ¶ 71. However, at no point did Defendant reduce or adjust the COI rates for this plan since at least 2010. *Id.* ¶ 19. Because risk rates are set in five-year brackets based on the insured's age, Plaintiff alleges that Defendant's policies "resulted in an increase in the COI at least once during the five years preceding the filing of this Complaint." *Id.* ¶ 56.

Based on publicly available data, Plaintiff deduces that Defendant breached a contractual duty to "decrease COI rates if it experiences an improvement in expected mortality." *Id.* ¶ 9. Plaintiff alleges that Defendant "did not base its adjustments on its expectations as to future mortality experience," because in that case "the COI rates should have decreased but, instead, Defendant increased the COI charges for its own financial gain." *Id.* ¶ 73. On December 29, 2022, Plaintiff filed a purported class-action complaint against Defendant, asserting claims for breach of contract, breach of implied covenant, conversion, and declaratory relief. *Id.* ¶¶ 107-34.

---

[3] A viatical settlement is the sale of an insured's existing life insurance policy to a third party for a lump sum payment at a discount from the full death benefit of the policy.

### B.      The Life Insurance Certificate and Group Policy

The exemplar certificate is attached to Plaintiff's complaint as Exhibit A.

After a two-page statement of account, the certificate's cover page states:

> We [Defendant] have issued a Group Policy to the Policyholder
> [Toshiba] named in the Schedule. The Group Policy is the only contract
> under which benefit payments are made. This Certificate describes the
> main features of the Group Policy.

*Id.* at 49. The certificate further defines "The Contract," as meaning: "The Group

Policy, the Policyholder's application, and any attached Riders form the entire

contract." *Id.* at 51. The certificate serves to specify the "main terms of insurance,"

as well as any subsequent rate changes:

> We will issue a new Schedule to show certain change in benefits or
> amounts which We approve after the Certificate Date. Any new
> Schedule will replace all Schedules previously issued to You.

*Id.* at 52.

The certificate then sets forth the following provisions, which form the basis

of Plaintiff's breach-of-contract claim:

> Cost of Insurance
>
> The Cost of Insurance is equal to the product of the Risk Rate and the
> Net Amount at Risk with respect to the Insured for the Policy Month.
> We subtract this Cost [*sic*] Insurance from the Cash Value each Policy
> Month.
>
> Risk Rate
>
> The Table of Risk Rates, Table 1 of the Schedule, shows the guaranteed
> maximum monthly risk rates We can charge for the Cost of Insurance.
> The Insured's Age, and Class determines which guaranteed rate

4

> applies. We may charge a lower rate. *We determine Our current Risk Rates based on Our expectation* of *future mortality.* We reserve the right to change Our current Risk Rates if We expect a change in the mortality factor. Such current rates will apply to all Insured of the same Age and Class.

*Id.* at 55 (emphasis added). The terms "expectation of future mortality" and "mortality factor" are undefined.

The group policy attached to Defendant's motion to dismiss contains similar language for the "Risk Rate" paragraph:

> The Table of Risk Rates, Table 1 of the PEG Schedule, shows the guaranteed maximum monthly risk rates We can charge for the Cost of Insurance. The Insured's Age, and Class determines which guaranteed rate applies. We *may* charge a lower rate.
>
> We *determine* Our current Risk Rates *based on* Our expectation of future mortality of a PEG Insurance Plan. We *reserve the right* to change Our current rates if We expect a change in the mortality factor. Such current rates will apply to all Insureds of the same Age and Class under a PEG Insurance Plan.

ECF No. 15-1 at 23 (emphasis added). Other clauses in the group policy indicate that the insurer exercises broad discretion over where to set COI rates within the guaranteed maximum rates:

> We may modify the Risk Rates applicable to a PEG Insurance Plan. The new Risk Rates will not exceed the guaranteed maximum cost of insurance rates shown in the applicable PEG Schedule.

*Id.* at 19. The risk rates for the group policy were adjusted upwards in 1998, 2000, and 2003. *Id.* at 50-52.

## II.    THE STANDARD OF REVIEW FOR MOTIONS TO DISMISS.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts must construe all well-pleaded "facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted.'" *IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quotation omitted). Legal conclusions, however, are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678-79. Thus, a pleading must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The standard for plausibility "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Id*.

When ruling on a Rule 12(b)(6) motion, a court must exclude all "matters

outside the pleadings," or else convert the motion into one for summary judgment. FED. R. CIV. P. 12(d). A court may therefore consider the contents of the pleadings, including attachments thereto, as well as any documents attached to the motion to dismiss, if they are referenced in the plaintiff's complaint and are central to the claims. *Boudreaux v. Axiall Corp.*, 564 F. Supp. 3d 488, 498 (W.D. La. 2021). Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 322 (E.D. Tex. 2021) (citing *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)). But a court should not evaluate the merits of the allegations—at the motion-to-dismiss stage, it must satisfy itself only that the "plaintiff has adequately pleaded a legally cognizable claim." *Bright v. City of Killeen*, 532 F. Supp. 3d 389, 396 (W.D. Tex. 2021) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004)).

## III.  THE MOTION TO DISMISS SHOULD BE GRANTED IN PART AND DENIED IN PART.

Plaintiff's entire theory is premised on a single clause in the life insurance contract. Plaintiff posits that this clause creates an ongoing duty to reduce COI rates. Defendant's motion to dismiss, therefore, directs the Court to discretionary language before and after the clause on which Plaintiff relies. Defendant attaches an exemplar of the group policy under which Plaintiff's certificate was issued and several other documents related to Plaintiff's claims. Defendant argues these documents confirm

the decision whether to change COI rates is discretionary and not dependent upon mortality rates. Even then, Defendant contends the last COI rate adjustment occurred in 2003, so Plaintiff's claims are barred by the statute of limitations. Plaintiff responds without addressing the discretionary language. Citing no binding authority, Plaintiff urges the Court to follow several district court decisions from outside the Fifth Circuit. Plaintiff also contends that the Court cannot consider Defendant's attached evidence, despite being referenced in and central to Plaintiff's complaint.

Based solely on the briefing before the Court, Defendant's motion appeared meritorious. But after oral argument, the Court is no longer convinced that Plaintiff fails to state *any* cognizable claim for relief. This is not to say that Plaintiff's reading of the contractual provisions is correct or reasonable, or that damages may even be available for a breach. Instead, the Court believes some discovery may be necessary before contract interpretation is fully possible, and the issues raised in the motion to dismiss may be better reserved for summary judgment. Accordingly, as stated at the hearing on January 25, 2024, the Court recommends denying the motion to dismiss, at least as it pertains to the breach-of-contract claim.

Nonetheless, in the interest of potentially narrowing the claims and the scope of discovery, the Court will briefly evaluate Defendant's arguments below. As the Court previously set forth in response to the parties' show cause briefing, *see* Order, ECF No. 38 at 8, the Court applies Texas substantive law at the motion-to-dismiss

stage.[4] Upon further discovery, it may be possible that a different state's substantive law applies to certain aspects of Plaintiff's claims.[5] This uncertainty is just one more reason why summary judgment may be a better vehicle for Defendant's arguments.

**A.    The Court May Consider Defendant's Exhibits at the Motion-to-Dismiss Stage, and Plaintiff Has Waived Its Objections.**

Because the Court ultimately recommends denying the motion to dismiss as to Plaintiff's contract claim, any error that may result from considering the attached documents is arguably harmless. Nonetheless, the Court observes that Exhibits A-1 (Toshiba group policy), A-2 (rate renewal notices), and A-3 (sample certificate), ECF No. 15-1 at 7-66, each fall under the established exceptions for documents referenced in the complaint and central to Plaintiff's claims. *See Gray v. GC Servs.*, 2023 WL 175192, at *2 (S.D. Tex. Jan. 12, 2023) (identifying three exceptions,

---

[4] Federal courts sitting in diversity apply the forum state's rules for conflict of laws. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (seminal case on choice of law analysis). The threshold inquiry for Texas courts is "whether there is a conflict between Texas law and the other potentially applicable law." *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722-23 (5th Cir. 2010) (quotations omitted). If the potentially applicable laws "do not meaningfully differ," then courts "need not resolve the choice-of-law question." *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023). Where an insurance contract does not contain a choice-of-law clause, Texas courts apply the Restatement's rebuttable presumption in favor of the law of the jurisdiction where the insured is domiciled. *Conestoga Tr. v. Columbus Life Ins. Co.*, 759 Fed. App'x 227, 233 (5th Cir. 2019); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192 (AM. LAW INST. 1971). In this case, the certificate attached to Plaintiff's complaint contains no choice-of-law clause, and the original insured resided in Texas at the time of issuance. ECF No. 1 at 48. The parties have not identified any potentially applicable laws that meaningfully differ from Texas law. Accordingly, the Court presumptively applies Texas law, and a full choice-of-law analysis is not yet necessary.

[5] The group plan contains a choice-of-law provision electing Rhode Island law, but that language is partly obstructed by a "Specimen Only" watermark. ECF No. 15-1 at 8. Defendant has not yet produced a copy of the actual contract.

including documents attached to the complaint, referenced in the complaint, or in the public record).

The only document attached to the complaint is the exemplar certificate of nonparty Charles de Ainza.[6] ECF No. 1 at 45-58. But that certificate plainly states that "[t]he Group Policy is the only contract under which benefit payments are made," whereas the certificate merely "describes the main features of the Group Policy." *Id.* at 49. Indeed, "The Contract" is defined as "The Group Policy, the Policyholder's application, and any attached Riders form the entire contract." *Id*. at 51. As for subsequent COI rate changes, the certificate states: "We will issue a new Schedule to show certain change in benefits or amounts which We approve after the Certificate Date." *Id.* at 52. Subsequent changes to the benefits schedule are thus incorporated into the contract, and Plaintiff's contract theory is entirely premised on the current COI rates. Moreover, Plaintiff explicitly relied on Exhibits A-1 and A-2 to support its arguments at the hearing, January 25, 2024 Oral Argument ("Oral Arg.") at 12:01, 12:21-24, so those objections have been waived. *See In re Hassell 2012 Joint Venture*, No. CV H-16-3220, 2017 WL 3141168, at *12 n.5 (S.D. Tex. July 24, 2017) (finding a party "effectively waived any objection to the exhibit by relying on it to support its arguments").

---

[6] Defendant notes that Plaintiff's exemplar certificate is missing several pages, and thus submits a full copy of a sample certificate. ECF No. 15 at 7 n.1. Plaintiff does not object to Exhibit A-3, which is a complete version of the certificate attached to the Complaint. *See* ECF 24 at 12 n.13.

The other exhibits attached to Defendant's motion and reply arguably fall under the exception for documents in the public record subject to judicial notice. *See Gray*, 2023 WL 175192, at *2. But Defendant's argument in favor of including those exhibits was cursory, and those exhibits are largely irrelevant to the substantive arguments. Oral Arg. at 11:34-35. Indeed, as noted at the hearing, Defendant does not assert that Plaintiff has no ownership interest in the certificate or otherwise lacks standing. *Id.* at 11:36-37. The Court therefore excludes from consideration Exhibits A-4 through E from the motion to dismiss, ECF No. 15-1 at 67-108, as well as Exhibits 1 and 2 from the reply, ECF Nos. 27-1, 27-2.

### B.    Plaintiff Alleges a Plausible Claim for Breach of Contract Under the Lenient Motion-to-Dismiss Standard, with Some Caveats.

Under Texas law, the elements of a breach-of-contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quotation omitted). Texas courts apply the following rules when interpreting contract provisions:

> Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. The primary concern of a court construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that

none are rendered meaningless. The terms used in the contract are given their plain, ordinary meaning unless the contract itself shows that the parties intended the terms to have a different, technical meaning. . . .

If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. If, however, the language of the contract is subject to two or more reasonable interpretations or meanings, it is ambiguous. . . . Under Texas law, a contract generally is construed against its drafter only as a last resort, after application of ordinary rules of construction leave reasonable doubt as to its interpretation.

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) (cleaned up). "Courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained." *ExxonMobil Corp. v. Elec. Reliability Services, Inc.*, 868 F.3d 408, 415 (5th Cir. 2017) (cleaned up).

### 1. The parties' competing interpretations fail to incorporate all relevant contract provisions.

Plaintiff's theory of breach focuses solely on one clause in the "Risk Rate" paragraph of the certificate: "We determine Our current Risk Rates based on Our expectation of future mortality."[7] ECF No. 1 at 55. Plaintiff contends this language imposes on Defendant "a duty to its policyholders to monitor its expected mortality rates." *Id.* ¶ 15. Despite well-publicized improvements in mortality rates, Defendant

---

[7] Plaintiff further alleges that the certificate provides: "Monthly cost of insurance rates will be determined by us from time to time based on our expectations as to future mortality experience." ECF No. 1 ¶ 47. But as Defendant correctly points out, this text is not contained in the certificate, ECF No. 15 at 15-16, and Plaintiff concedes that error, ECF No. 24 at 6 n.7.

has not adjusted its COI rates since at least 2010. *Id.* ¶¶ 19-21. Plaintiff thus alleges breach of contract because Defendant increased or failed to reduce COI rates even though its "expectations of future mortality experience supported a decrease," and it did not consider "any of its expectations of future mortality experience when determining the amount of COI to deduct." *Id.* ¶ 109. In essence, Plaintiff asserts two theories of breach: (1) failure to periodically review and "determine" COI rates, and (2) failure to set current COI rates "based on" improving mortality rates.

In its motion to dismiss, Defendant highlights the discretionary language immediately before and after the "determine" clause, and elsewhere in the group policy. ECF No. 15 at 16-18. Defendant contends that "'may' clearly denotes discretion," as does the "We reserve the right" statement, so Defendant is under no obligation to lower its rates.[8] *Id.* at 17. Thus, Defendant argues that "Plaintiff's failure to decrease rates theory is not a reasonable interpretation of the contract." *Id.* at 18. Defendant further argues that, even if a duty exists, "based on" does not imply exclusivity and other factors may be considered. *Id.* at 26-29. But Defendant never incorporates any relevant language from the "determine" clause.[9]

---

[8] Defendant fails to acknowledge that one source of its supposedly broad discretion is contingent upon whether it "expect[s] a change in the mortality factor." ECF No. 15-1 at 60. What effect this contingency should have on any discretion is unexplained. However, courts must interpret the text as written and cannot rewrite a contract to add or delete terms. *ExxonMobil Corp.*, 868 F.3d at 415.

[9] Defendant further asserts that the COI rates for this group policy were last adjusted in 2003, so any breach from increasing rates is plainly time-barred. *Id.* at 18-23.

In response, Plaintiff focuses solely on the "determine" clause while ignoring all other discretionary language in the contract.[10] ECF No. 24 at 13. Plaintiff points to several out-of-circuit district court cases finding a duty in similar language contained in life insurance contracts. *Id.* at 14-16. Absent from those cases is the plainly discretionary language that Defendant cites here.[11] Plaintiff fails to address the contract's discretionary language. Instead, the parties largely argue past each other in their briefing, and neither party attempts to fully incorporate all language in the contract. Although the parties made progress toward rectifying this oversight at the hearing,[12] their new interpretations are unbriefed and improperly raised for the

---

[10] Plaintiff also asserts that the "based on" language makes mortality rates a "critical" factor, if not the "exclusive" one. ECF No. 24 at 17-19. Plaintiff insists that interpreting the provision to mean "based *solely* on" is the "better" interpretation. *Id.* at 16 n.18. Plaintiff further contends its contract claims are not barred by limitations for various reasons. *Id.* at 22-28.

[11] Plaintiff relies heavily on *Yue v. Conseco Life Ins. Co.*, No. CV 08-1506 AHM (JTLx), 2011 WL 210943 (C.D. Cal. Jan. 19, 2011), which interpreted a similar "determine" clause as imposing a continuing obligation on the insurer, *id.* at *7-8. But absent from *Yue* is any discussion of other clauses in the contract vesting the insurer with discretion. Plaintiff also submits the recent decision of *PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, No. 4:18-CV-00368-SMR-HCA, 2023 WL 3714746 (S.D. Iowa May 27, 2023), in its notice of supplemental authority, ECF No. 41. Once again, however, the determining factor in *PHT Holding* was the *absence* of any provision granting the insurer the "unbridled discretion" it sought. 2023 WL 3714746, at *6. In that respect, Plaintiff fails to distinguish *Slam Dunk I, LLC v. Connecticut Gen. Life Ins. Co.*, 853 Fed. App'x 451, 452 (11th Cir. 2021), or *Advance Tr. & Life Escrow Services, LTA v. Protective Life Ins. Co.*, No. 2:18-CV-01290-MHH, 2022 WL 3159266, at *5 (N.D. Ala. Aug. 8, 2022), where the use of permissive language elsewhere in the contract resulted in dismissal, *see* ECF No. 27 at 3 & n.2. Although courts have reached divergent conclusions on similar language, most cases—and the more well-reasoned view—support dismissal in situations where the policy explicitly grants the insurer discretion. *Cf. PHT Holding*, 2023 WL 3714746, at *6 ("An unambiguous policy providing such discretion should provide language notifying prospective policyholders accordingly.").

[12] For example, Defendant posited that the "determine" clause is purely explanatory, as the "current rates" at the time of inception for the Toshiba group plan were based on the mortality rates at the time of issuance. Oral Arg. at 11:14-17. Plaintiff countered that if such a static explanation was

first time at oral argument. *See Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (noting general rule that courts "will not consider arguments raised for the first time at oral argument"); *United States v. Liggins*, 155 F. Supp. 3d 665, 667-68 (N.D. Miss. 2016) (applying same approach to hearing on motion to dismiss).

Due to these competing interpretations, Plaintiff raises the doctrine of *contra proferentem*. ECF No. 24 at 20-22. Under Texas law, "if an insurance coverage provision is susceptible to more than one reasonable interpretation, the court must interpret that provision in favor of the insured, so long as that interpretation is reasonable." *In re Deepwater Horizon*, 728 F.3d 491, 499 (5th Cir. 2013). However, as a general matter, "[t]he rule of construing a contract against its drafter does not apply unless the contract is ambiguous, and only then as a 'last resort' if all other canons of construction fail to yield a superlatively defensible interpretation." *Robinson v. Home Owners Mgmt. Enterprises, Inc.*, 549 S.W.3d 226, 242 (Tex. App.—Fort Worth 2018), *aff'd*, 590 S.W.3d 518 (Tex. 2019).

---

intended, then "determine" would have been in past tense. *Id.* at 11:43. In contrast, Plaintiff argued that the proper way to interpret these clauses in conjunction was through a three-step process. *Id.* at 11:43-44. But Plaintiff quickly abandoned this interpretation, opting instead to argue that the preceding clause—"may charge a lower rate"—only applies to the guaranteed rates, which are not at issue here. *Id.* at 11:55. Plaintiff also clarified that its theory of breach is not that "based on" implies exclusivity but that Defendant never considered mortality rates *at all*, despite being the sole named factor. *Id.* at 11:53. The Court agrees with the Seventh Circuit's conclusion "that absent a promise to use a specific formula when calculating a COI rate, an insurer is not bound to consider only those factors listed in a COI provision." *Norem v. Lincoln Ben. Life Co.*, 737 F.3d 1145, 1155 (7th Cir. 2013). Thus, even if mortality is the primary factor, "it is not unreasonable in a universal life insurance policy to consider profit as a secondary factor in calculating the COI rate." *Id.*

The problem with applying *contra proferentem* at this juncture is that the Court has not yet determined *whether* the contract is ambiguous. "A contract is not ambiguous simply because the parties disagree over its meaning." *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015) (quotation omitted). Instead, "[o]nly where a contract is first determined to be ambiguous may the courts consider the parties' interpretation." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022) (quotation omitted). Even then, "a policy is only ambiguous 'if, after applying the rules of construction, it remains subject to two or more reasonable interpretations.'" *Id.* (quotation omitted). Thus, before the Court can consider *either* party's competing interpretations,[13] the Court must first engage in some level of contract interpretation to determine whether the contract is unambiguous and susceptible to a single meaning.

### 2. Full contract interpretation is not yet possible on this record, but Plaintiff at least states a plausible claim for relief.

However, the Court finds itself in a quandary before even reaching this first step. "Texas courts determine whether a clause is ambiguous 'by looking at the contract as a whole in light of the circumstances present when the contract was

---

[13] Significantly, neither party has offered an interpretation that fully accounts for all relevant language in the contract. *See Sandt v. Energy Maint. Servs. Grp. I, LLC*, 534 S.W.3d 626, 643 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (reiterating that courts "do not read contractual provisions in isolation from one another" or "consider terms that favor one party's interpretation of the contract and disregard the rest").

16

entered.'" *Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, 847 F.3d 255, 258 (5th Cir. 2017) (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)). "Texas law requires each contract to be interpreted based on its own language rather than allegedly similar language or clauses found in other contracts." *Balfour Beatty Constr., LLC v. Liberty Mut. Ins. Co.*, 366 F. Supp. 3d 836, 840 n.5 (S.D. Tex. 2018), *aff'd sub nom. Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504 (5th Cir. 2020). Therefore, to determine *whether* there is an ambiguity, the Court needs the whole contract *and* an understanding of the circumstances at the time of contracting. Neither is possible on this briefing in the context of a motion to dismiss.

Indeed, the Court still does not have a copy of the *actual contract*. The exemplar certificate attached to the complaint states that it is not a contract. *See* ECF No. 1 at 49, 51. The group policy attached to the motion to dismiss is only a specimen copy. *See* ECF No. 15-1 at 8. The affidavit of Linda Bailer attached to the motion to dismiss explains that "Toshiba would have maintained the original Participating Employer copy of the contract." *Id.* at 4. Despite ordering Defendant to "produce a copy of the underlying policies" and all relevant documents, Order to Show Cause, ECF No. 32 at 7, Defendant's reply contained no attachments, *see* ECF No. 37. Moreover, the group policy is between Toshiba and Commercial Life Insurance Company, ECF No. 15-1 at 41, neither of whom are parties to this case.

Thus, the Court proceeds with caution. While issues of contract interpretation

are questions of law that usually may be decided at the motion-to-dismiss stage, this situation presents some complications. Indeed, where contract interpretation issues are presented, courts in the Fifth Circuit frequently defer ruling until summary judgment. *See, e.g.*, *Transtelco, Inc. v. Zayo Group, LLC*, No. EP-20-CV-00008-DCG, 2021 WL 2470367, at *4 n.3 (W.D. Tex. Apr. 5, 2021) (collecting cases); *Al-Saud v. Youtoo Media, L.P.*, No. 3:15-CV-3074-C, 2016 WL 7680712, at *2 (N.D. Tex. Aug. 23, 2016) (denying motion to dismiss, noting "arguments about contract interpretation are more appropriately addressed at the summary judgment stage").

Regardless, all that is necessary to survive a motion to dismiss is a cognizable claim. "Rule 12(b)(6) motions should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Will v. Lumpkin*, No. 15-CV-3474, 2023 WL 2671387, at *14 (S.D. Tex. Mar. 28, 2023) (quoting *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 388 (5th Cir. 2002)). While the Court does not attempt to conclusively interpret the contract at this time, even Defendant does not dispute that it must at least consider "mortality" when setting its COI rates, although not exclusively. *See* ECF No. 15 at 26. Because Plaintiff alleges Defendant *never* considered mortality rates when determining COI rates, ECF No. 1 ¶¶ 20-21, 109, there are at least some

factual scenarios under which Plaintiff may state a claim.[14]

At the motion-to-dismiss stage, the Court declines to address any other contract-related issues, including the statute of limitations.[15] Indeed, limitations issues are best left for summary judgment, as evidence outside the pleadings is typically needed.[16] This is not to imply that Defendant's limitations defense is without merit—the Court expressed its concerns at oral argument that Plaintiff's

---

[14] Because Defendant only asserts lack of duty and not absence of damages in its motion to dismiss, the Court need not consider whether such a theory would provide for any meaningful recovery. *Cf. Merritt Hawkins & Associates, L.L.C. v. Gresham*, 861 F.3d 143, 155 (5th Cir. 2017) ("Texas recognizes that nominal damages may be awarded for a breach of contract.").

[15] This includes Plaintiff's tolling theories. Nonetheless, Plaintiff preemptively raised several potential bases of tolling in the complaint. ECF No. 1 ¶¶ 88-89. In response to Defendant's motion to dismiss, however, Plaintiff waived any argument it had for fraudulent concealment by only cursorily mentioning the theory in passing. *See* ECF No. 24 at 25 n.23, 34. Plaintiff's arguments on continuous breach are equally unavailing, as Plaintiff cites no Texas case law in support. *See id.* at 23-25. As for the discovery rule, due to the four-year limitations period and because "a breach of contract claim accrues when the contract is breached," not when the injury is felt, Texas courts have routinely "refused to apply the discovery rule to defer accrual until a breach of contract is discovered." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006); *see also Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 544 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding discovery rule inapplicable "as a matter of law" in contract claims where the plaintiff "had a contractual right to audit and declined to exercise that right for many years despite a new and substantial fee being charged"). Plaintiff fails to meaningfully address this authority in its response. Indeed, Plaintiff conceded at oral argument that any recovery would be limited to breaches that occurred in the four years prior to filing suit. Oral Arg. at 11:47.

[16] *See Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021) (noting that a Rule 12(b)(6) motion on limitations may be granted only if a rejoinder is "foreclosed by the allegations in the complaint" (quotation omitted)); *Curtis v. Cerner Corp.*, 621 B.R. 141, 159 (S.D. Tex. 2020) ("In other words, the complaint must have effectively pled Plaintiff out of court for the statute of limitations to be grounds for dismissal."). In this instance, Defendant attaches three rate renewal notices dated 2003 at the latest. ECF No. 15-1 at 50-52. While acknowledging that the group policy is subject to yearly reviews, Defendant does not state when the last review occurred or whether mortality rates were discussed. But even if the Court considers Defendant's attached affidavit, there is no statement that these three rate renewals are the *only* times the Toshiba group policy has ever been modified. *Id.* at 4-5. More importantly, these facts are not alleged in the complaint, so Plaintiff cannot be said to have *pleaded* itself out of court.

claims may be limited in scope, and proof of direct damages may be nearly impossible for breach of a duty so couched in discretion. Oral Arg. at 12:41-43. The Court remains doubtful that Plaintiff's theory can survive summary judgment. But on this record at the motion-to-dismiss stage, the Court is unable to make such a determination.

This is admittedly a close call. But the actual contract and the circumstances surrounding its formation are not before the Court. Because motions to dismiss are generally "viewed with disfavor," *IberiaBank*, 953 F.3d at 345 (quotation omitted), Plaintiff's complaint survives by the narrowest of margins. Accordingly, the Court concludes that Plaintiff has pleaded a plausible claim for breach of contract, although perhaps not under the precise theory espoused in the complaint.

## C.    Plaintiff's Extracontractual Claims Are Waived for Inadequate Briefing and Additionally Fail to State a Claim for Relief.

Plaintiff also asserts claims for breach of implied covenant of good faith and fair dealing, conversion, and declaratory judgment. Defendant argues in its motion that those claims are barred for various reasons and must be dismissed. ECF No. 15 at 30-35. But Plaintiff only partially responds to those arguments,[17] and the parties

---

[17] Plaintiff does not defend or even mention its declaratory judgment claim. But Defendant argues only that it is duplicative of Plaintiff's contract claim. ECF No. 15 at 35. While courts "regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit," *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, 2014 WL 3543720, at *4 (S.D. Tex. July 14, 2014), there is also generally no bar to pleading claims in the alternative, *see* FED. R. CIV. P. 7(d). Because it is inextricably linked to the breach-of-contract claim, Plaintiff's duplicative declaratory judgment claim may also proceed for now.

barely mentioned those claims at oral argument. Oral Arg. at 11:23-26, 59. Thus,

when the Court indicated that the motion to dismiss would be denied, this was only

with respect to Plaintiff's contract claims. As explained below, however, Plaintiff

has waived its extracontractual claims due to inadequate briefing, and the complaint

fails to adequately state any claim for breach of implied covenant or conversion.

### 1. *Plaintiff's response to the motion to dismiss fails to adequately address the extracontractual claims, resulting in waiver.*

"Courts have consistently held that inadequate briefing results in a waiver of

a party's argument." *Hall v. Mut. of Omaha Ins. Co.*, No. 4:16-CV-160-DMB-JMV,

2018 WL 1440075, at *18 (N.D. Miss. Mar. 22, 2018) (quotation omitted); *cf.* Local

Rule 7.4 ("Failure to respond to a motion will be taken as a representation of no

opposition."). Arguments may be waived where the party "fail[s] to adequately brief

its arguments, and support them with facts, evidence, or applicable authority." *New*

*Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340,

at *11 (S.D. Tex. Dec. 20, 2019).

> At the very least, this means clearly identifying a theory as a proposed
> basis for deciding the case—merely intimating an argument is not the
> same as "pressing" it. In addition, among other requirements to
> properly raise an argument, a party must ordinarily identify the relevant
> legal standards and any relevant Fifth Circuit cases.

*Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 Fed. App'x 146, 151 (5th Cir.

2015) (cleaned up). This is equally true at the motion-to-dismiss stage, and "if a

plaintiff fails to respond to an argument raised in a motion to dismiss, it is deemed

to be abandoned." *Reese v. Wells Fargo US Holdings, Inc.*, No. 19-CV-799-S-BK, 2020 WL 874807, at \*1 (N.D. Tex. Jan. 30, 2020), *report and recommendation adopted*, No. 3:19-CV-0799-S-BK, 2020 WL 870227 (N.D. Tex. Feb. 20, 2020) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)).

In its response, Plaintiff only cursorily mentions its breach of implied covenant claim in a single sentence with no meaningful analysis. *See* ECF No. 24 at 7-8 (quoting *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), *holding modified by Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990)). This same cursory response was all Plaintiff provided at the hearing. *See* Oral Arg. at 11:59. As for its conversion claim, Plaintiff failed to respond to any of Defendant's arguments at the hearing. *See* Oral Arg. at 11:23-26 (Defendant's arguments on extracontractual claims). Plaintiff's briefing fares only marginally better—despite agreeing that Texas law governs its claims, Plaintiff cites primarily California law in response to Defendant's arguments on the economic loss rule. ECF No. 24 at 32-33. The Court is hard-pressed not to find those arguments waived due to inadequate briefing. "Nonetheless, failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012). The Court, therefore, proceeds to briefly address the legal sufficiency of Plaintiff's extracontractual claims.

### 2.    *Plaintiff's reliance on* **Arnold** *is misplaced, as Texas does not recognize any cause of action for breach of implied covenant outside the context of bad faith insurance claim denial.*

Defendant argues that Texas does not impose an implied covenant of good faith and fair dealing in every contract, except under limited circumstances. ECF No. 15 at 30-32. One such circumstance is the tort cause of action for bad faith insurance claim denial. *See Arnold*, 725 S.W.2d at 167 (Tex. 1987). But Texas courts have been reluctant to expand that duty any further. *See, e.g.*, *Wheeler v. Yettie Kersting Mem'l Hosp.*, 866 S.W.2d 32, 51-52 (Tex. App.—Houston [1st Dist.] 1993, no writ) (refusing to extend implied duty to medical malpractice context). Defendant further argues that an extension of *Arnold* is unwarranted under these circumstances, as the Toshiba group policy was the result of bargaining between two corporate entities as opposed an individually purchased plan. ECF No. 15 at 32. As noted, Plaintiff's sole rejoinder is a cursory reference to *Arnold*. ECF No. 24 at 7-8.

The Texas Supreme Court's holding in *Arnold*, however, forecloses Plaintiff's claim:

> While this court has declined to impose an implied *covenant* of good faith and fair dealing in every contract, we have recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract.

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims. In addition, without such a cause of action insurers can arbitrarily deny

coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims. For these reasons a duty is imposed that "An indemnity company is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business."

A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.

*Arnold*, 725 S.W.2d at 167 (cleaned up) (emphasis in original).

Plaintiff's reliance on *Arnold* is misplaced, as that case reaffirmed that Texas law does not recognize any "implied covenant" in contracts. *Id.* Instead, *Arnold* involved the narrow circumstances of an insurer denying a claim and refusing to defend in bad faith. *Id.* at 166-67. Even the test set forth in *Arnold* for the "cause of action for breach of the duty of good faith and fair dealing" explicitly requires "denial of a claim or delay in payment," *id.* at 167, neither of which are alleged here. The Court is aware of no cases extending *Arnold* to the calculation of COI rates, and Plaintiff identifies none. Absent any cogent rationale for extending *Arnold* beyond its existing scope, the Court must dismiss Plaintiff's claim for breach of implied covenant. *Cf. In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781 (5th Cir. 2018) ("When sitting in diversity, a federal court exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts.").

### 3. *Plaintiff's conversion claim is contingent upon its contract claim and therefore barred by Texas's economic loss rule.*

Defendant seeks dismissal of Plaintiff's conversion claim for two reasons: (1) money is not subject to conversion, and (2) the economic loss rule bars tort claims. ECF No. 15 at 32-35. To state a cognizable claim for conversion, a plaintiff must allege that: "(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). But money is not generally considered "property" subject to conversion under Texas law, and "[m]oney is subject to conversion only when it can be described or identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally." *Estate of Townes v. Townes*, 867 S.W.2d 414, 419 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

On the first grounds, Plaintiff counters that the policy's "Cash Value" is a "segregated" account and thus satisfies the narrow "specific chattel" exception. ECF No. 24 at 28-32. Although Defendant raises convincing arguments in support of its motion,[18] the Court is bound by Plaintiff's allegations at the motion-to-dismiss stage.

---

[18] Indeed, Plaintiff never alleges how much was in that fund at any given time. Instead, "Cash Value," as explained on the certificate, is merely a calculation adding up the monthly premiums and interest paid to date, minus COI payments and other expenses. ECF No. 1 at 55. Based solely on the contract language, there is no apparent basis for treating "Cash Value" as any different from

25

*See* ECF No. 1 ¶ 22, 37 (alleging that cash value account was "held in trust"). While these allegations border on legal conclusions, the Court will assume that in practice this account was treated as a *de facto* specific chattel, as Plaintiff has alleged. Instead, it is the economic loss rule that is fatal to Plaintiff's conversion claim.

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). "Under Texas law, the rule does not apply to claims that are sufficiently independent from the underlying contract." *Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., L.L.C.*, 945 F.3d 423, 429 (5th Cir. 2019). However, "if the action is not maintainable without pleading and proving the contract . . . , it is, in substance, an action on the contract," and no tort claims may be asserted. *Id.* at 431 (quoting *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith*, 198 S.W.2d 729, 735 (Tex. 1946)). In addition to the source of the legal duty, courts are instructed to examine the "nature of the injury" and the "remedy sought." *Id.* (quotation omitted).

Plaintiff insists that its conversion claim arises from breach of "duties to the

---

a common savings account. *Cf. Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 668 (S.D. Tex. 2015) ("Bank accounts 'generally cannot be the subject of conversion, because they are not specific money, but only an acknowledgment by the bank of a debt to its depositor.'" (quotation omitted)); *Carson Energy, Inc. v. Riverway Bank*, 100 S.W.3d 591, 598 (Tex. App.—Texarkana 2003, pet. denied) ("Funds placed with the bank ordinarily become general deposits which create a debtor/creditor relationship between bank and depositor.").

policyholder independent of the Unum UL Policy contract language." ECF No. 24 at 34. Plaintiff, however, identifies no such duties. Indeed, the complaint confirms that Plaintiff's entire theory of conversion is contingent upon its interpretation of the contract language. *See ECF* No. 1 ¶ 123 ("Defendant deducted from their Cash Values in excess of the amounts permitted by the terms of the UNUM UL Policies."). Plaintiff's response reiterates that "Defendant deducts COI from the policy owner's Cash Value in an amount that is to be *based on the COI formula set out in the UNUM UL Policy contract*." ECF No. 24 at 33 (emphasis added). Plaintiff does not allege that Defendant had *no right* to deduct COI payments, only that Defendant "should have decreased its premiums consistent with its *contractual obligations*." *Id.* at 9 (emphasis added). Despite Plaintiff's attempts to plead around the economic loss rule, it is evident from its pleadings that the only damages sought are expectation damages, *i.e.*, the difference between the COI rates as charged and the rates that allegedly should have been charged under Plaintiff's interpretation of the contract.

Plaintiff's reliance on California law in its response is perplexing. ECF No. 24 at 32-33 (discussing *Fine v. Kansas City Life Ins. Co.*, 627 F. Supp. 3d 1153, 1161 (C.D. Cal. 2022)). Plaintiff makes no attempt to bridge non-binding California law to Texas's economic loss rule.[19] Plaintiff further overlooks that the conversion

---

[19] *Cf. Page v. State Farm Life Ins. Co.*, No. SA-20-CV-00617-FB, 2022 WL 718789, at *12-14 (W.D. Tex. Mar. 10, 2022) (concluding that conversion claim for excessive COI rates barred by

claims in *Fine* were dismissed for failure to allege every element. 627 F. Supp. 3d at 1164. The same can be stated here, *see* ECF No. 1 ¶¶ 122-29 (failing to allege possession, entitlement, demand for return, or refusal), although Defendant has not sought dismissal on that basis.

Nor is Plaintiff's attempt to distinguish *Correct RX* convincing. *See* ECF No. 24 at 35-36. *Correct RX* involved no concurrent contract claims because the contract was allegedly induced by fraud. 945 F.3d at 429-30. Instead, the conversion claim in *Correct RX* was premised on a separate common law "duty to use reasonable care in obtaining and communicating information," so the economic loss rule did not apply. *Id.* at 430. Whereas here, Plaintiff does not assert fraudulent inducement and it alleges no negligent misrepresentations. The only duty Plaintiff identifies is that contained in the "determine" clause, which Plaintiff insists "contractually obligated [Defendant] to reduce the COI rates." ECF No. 1 ¶ 16. In other words, to succeed on conversion, Plaintiff must also succeed on breach of contract. Plaintiff's conversion claim, therefore, "is not maintainable without pleading and proving the contract," *Int'l Printing*, 198 S.W.2d at 735, and as such it is barred by the economic loss rule.

---

Texas's economic loss rule under similar circumstances). As noted in *Page, id.* at *12, it is apparent the only reason Plaintiff brings a conversion claim is to avail itself of punitive damages, *see* ECF No. 1 ¶¶ 27, 129. Whereas punitive damages are not available for breach of contract, *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659 (Tex. 2012), which is the only claim that remains here.

## IV.  CONCLUSION

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that Defendant's motion to dismiss, ECF No. 15, should be **GRANTED IN PART AND DENIED IN PART**. Plaintiff's extracontractual claims for breach of implied covenant of good faith and fair dealing and conversion should be **DISMISSED**. In all other respects, the motion should be **DENIED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 8, 2024, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**